[No. 39980.     Department Two.     October 24, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. CLARENCE EARL
COLLINS, *Appellant.**

*Victor J. Felice,* for appellant (appointed counsel for appeal).

*George A. Kain* and *John P. Murray,* for respondent.

*Reported in 446 P.2d 325.

HUNTER, J.—The defendant (appellant), Clarence Earl Collins, was jointly charged by information with Alvin Monroe Cain, and Charles LeRoy Jones, with two counts of aiding and abetting the commission of the crime of first degree forgery and one count of aiding and abetting the attempt to commit the crime of first degree forgery. Pursuant to the defendant's conviction on all three counts in a jury trial, this appeal was taken.

On the morning of June 23, 1967, Collins and Cain met Jones and one Dillard Simpson in a Spokane tavern where they drank wine and beer for several hours. Collins and Cain suggested that they make some money. They left the tavern and returned shortly with a number of check blanks which had been stolen from Spokane Transmissions, a business owned by Robert A. Cobb. Three of the check blanks were made payable to Simpson in the sum of $61.33 each with Mr. Cobb indicated as the purported maker thereof. Two of the checks were cashed: one at Jud's Market, another at Bill's Market; however, the third was rejected when attempts were made to cash it at a Safeway Store and at a Low Cost Market. Management of the latter two stores were aware of a check alert on the stolen check blanks and they notified the police who apprehended the four men shortly thereafter.

The primary issue on this appeal concerns the statements made by the defendant Collins to Detective Alex Solinsky, of the Spokane Police Department, out of the presence of Collins' court appointed attorney. The statements were made in a conversation that took place on July 5, 1967, between Collins and Detective Solinsky. Solinsky testified he received a call from the Spokane County chief jailer, Darrel Holmes, indicating that the defendant wished to speak to him. Collins testified that he never made such a request.

The defendant admitted that he had been advised of his rights prior to the interview. During the interview, the defendant told the detective he could produce the machine used to make the checks, described the machine's imprint-

ing operation, the fact that the serial number had been removed from it and that the machine had been obtained from out of town. He also stated that "If you can get me reduced sentence I can get you some type of check protector, . . ."

The defendant contends that during the interview, Detective Solinsky told him the conversation would be strictly "off the record" and merely between the two of them. Were it not for such a statement, the defendant claims he would not have spoken to the detective without the presence of his counsel: "And that was the only reason why I talked to him, and he says he would see the district attorney and try to get a reduced sentence if I could find some check protector or something, . . ."

However, Detective Solinsky testified that the statement "off the record" was made by the defendant who also told the detective, "anything you may say I have said here, it is your word against mine."

The trial court believed the testimony of Solinsky, holding in a pretrial hearing that Collins had knowingly and intelligently waived his constitutional rights, and that the statements of Collins in the conversation were voluntarily made, to which ruling the defendant has assigned error.

■ It is first contended by the defendant that the state failed in its burden of proving that the accused effected a valid and voluntary waiver of his constitutional rights and that the statements made to Officer Solinsky were not the product of deception and cajolery. He correctly argues that the prosecution has a heavy burden of proof in demonstrating that the admissions made by the defendant were voluntary and that the defendant intelligently and knowingly waived his rights. *State v. Davis,* 73 Wn.2d 271, 284-85, 438 P.2d 185, 193 (1968); *Miranda v. Arizona,* 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 Sup. Ct. 1602, 1628 (1966). Moreover, in sustaining this burden, the state does not have the assistance of any presumptions. *State v. Davis, supra,* at 285. The real question, therefore, is whether the prosecution has met the "heavy burden" of *Miranda* and *Davis,*

*supra,* of providing that the waiver was made knowingly and intelligently, and was not the product of deception and cajolery as the defendant contends.

■ In *State v. Vangen,* 72 Wn.2d 548, 554, 433 P.2d 691, 694-95 (1967), this court set forth certain factors which could be considered in determining a voluntary waiver of constitutional rights:

> In considering whether appellant knowingly and voluntarily waived his constitutional rights to counsel and to remain silent, we may consider that appellant (then 35 years of age) was not unfamiliar with police interrogation, having theretofore been convicted of forgery, auto theft, and non-support of minor children. He had served four or more years in prison. The following observation from *State v. Darst,* 65 Wn.2d 808, 816, 399 P.2d 618 (1965), is applicable here:
>
> > "Appellant was no inexperienced youth, unknowing in the ways of the world, nor a stranger to the technique of a police interrogation. His numerous arrests and convictions establish this beyond a doubt. He could not help knowing that he could not be compelled to talk to the officers or that whatever he said or wrote might be used against him at his trial. *State v. Self,* 59 Wn. (2d) 62, 366 P. (2d) 193."

A similarly appropriate comment is contained in *State v. Huston,* 71 Wn.2d 226, 229, 428 P.2d 547, 549 (1967):

> The present case is not one of a man who, at the time of the inquiry in question, was unaware of his absolute constitutional right to remain silent. It is undisputed that he had been so advised and he proceeded to demonstrate his understanding of that advice by speaking only to those things which he chose to speak to and by refusing to talk about other aspects of the charge.

■ In the instant case, the defendant admitted that he was advised prior to the interview of his right to remain silent. The record shows he was anything but an inexperienced youth. He had a criminal history which included six felony convictions and he had been released from his last penal institution on April 13, 1967, approximately 2 months prior to the commission of the crimes herein charged. His

experience was also borne out by the fact that during the first interview, conducted on June 26, 1967, he declined to give the officers a handwriting exemplar or to discuss the facts of the case. He further demonstrated his knowledge of present-day legal problems by indicating to the detective the difficulty the latter would encounter should the statement be used in court and it became one's word against the other.

Contrary to deception, it is clear from the record that the defendant's statements were a calculated attempt on his part to bargain with the police to lower the charges and to enter a plea of guilty to a lesser offense. The pretrial hearing record contains language to the effect that the defendant realized his criminal record would look bad in any trial when placed before a jury. Detective Solinsky, when questioned directly by the court, testified as follows:

Q. How is it you didn't take him out of jail and go find it like you did Mr. Cain? A. Because Mr. Collins at that time asked me to talk to the prosecutor's office, persuade him to reduce the charge to a misdemeanor. If I were able to persuade the prosecuting attorney's office to reduce it to a misdemeanor he would be willing to plead guilty and face a maximum of six months in the county jail. And I gave this information to the prosecutor's office who was not interested in making any deals with him or anyone else. Q. My question was, why didn't you happen to take him out to find the check protector? A. Because he wanted a deal first. Q. That was the condition of his showing you? A. That was the conditions. I would recover it if I made a deal.

Subsequently, the defendant also testified in the pretrial hearing at which time he corroborated the detective's testimony in the following manner:

Q. Then what happened after that between you and Officer Solinsky? A. The second time he called me out. We talked about forgeries and one thing and another, and I told him, well, I says, "If you can get me reduced sentence I can get you some type of check protector," and so he went on and tell me about how this here check protector worked and one thing and another, and I agreed with him all the way through on that . . . .

Q. Did you request Officer Solinsky to reduce the charge? A. No, sir. I asked him if he could get me a state vagrancy charge and he told me, asked me why, and I said on the fact that I have a previous record and I didn't want to take the chances standing trial on some kind of evidence that I don't know anything about. Q. You were willing to plead guilty to a misdemeanor? A. Yes, sir. . . . Q. Perhaps I misunderstood, Mr. Collins, but why did you want to plead guilty to something you had nothing to do with, and you didn't even know what they were talking about? A. For the reason I have a previous criminal record and I know what—it looked bad for me. For any crime I would be convicted with, it would look bad for me.

The prosecutor continued the cross-examination of the defendant by asking him questions concerning his past criminal convictions. In questioning him concerning a sixth conviction, the following response was elicited:

Q. Do you recall the burglary in Seattle, Washington, some time in 1935? A. Yes, sir. *See, Your Honor, that's why I had to talk to him.* (Italics ours.)

We are satisfied from the testimony of Collins admitting his desire for a reduced sentence and his implicit fear of another felony conviction that the trial judge was justified in believing Solinsky's testimony; first, that the conversation with Solinsky was solicited by Collins, and second, that the incriminating statements made by Collins were not induced by deception and cajolery but pursuant to the admitted desire of the defendant to obtain a reduced sentence. The defendant with his extensive criminal record was unquestionably aware of his constitutional rights and intelligently understood his constitutional rights from the warning he admitted Officer Solinsky had given to him before the conversation ensued without the presence of his counsel. The heavy burden of the state in proving that the defendant waived his constitutional rights and that the statements of Collins, as testified to by Solinsky, were voluntarily made, is sustained by this record.

■ The defendant further contends that the trial court erred in admitting the conversation between the defendant

and Solinsky in violation of *State v. Davis, supra.* The *Davis* case is not apposite. The *Davis* case relates to the application of the missing witness rule. In that case the defendant denied making the admissions upon which he was convicted and there was no evidence to corroborate the testimony of the police officer that the defendant did make the admissions in the interrogation. Another police officer was present at the interrogation and was available to testify, but he was not called by the state. We there applied the missing witness rule and held that the state had not sustained the heavy burden of proving the truth of the officer's testimony. In this case there is no dispute that the defendant Collins made the incriminating statements; here the question is whether he was deceived into making them. Moreover, no witness was present other than Solinsky when the conversation with the defendant transpired. We hold that the defendant's experience and his testimony negates any possibility of deception and corroborates the testimony of Officer Solinsky.

We did say in *Davis* that the state should insure that there be some method of providing corroboration for the testimony of an interrogating officer when the interrogation of an accused takes place. In view of that decision, the defendant further contends on this appeal, that a memo allegedly given by Collins to the chief jailer that he wished to speak to Officer Solinsky, should have been introduced into evidence. It is to be noted, however, that the *Davis* decision had not been published when the conversation with the defendant and Solinsky occurred. Thus, the Spokane police were not then aware of the *Davis* guidelines for conducting an in-custody interrogation. The record shows that at that time several such requests were being made daily by the prisoners to the jailers who did not keep records of these requests. Moreover, as we have already stated, there is corroborating evidence to support the judgment of the trial court.

736

The defendant's further contention that the evidence was not sufficient to sustain the verdict of the jury is without merit.

The judgment of guilty on all three counts entered by the trial court upon the jury verdict is affirmed.

HILL, WEAVER, HAMILTON, and NEILL, JJ., concur.