[No. 39846. Department Two. November 14, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN LUCIA, *Appellant.*[*]

*Richard I. Sindell,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Paul M. Acheson,* for respondent.

[*]Reported in 447 P.2d 606.

RYAN, J.†—The appellant (defendant), Norman Lucia, was convicted of second degree burglary by jury and sentenced to a maximum term of 15 years in prison. He now appeals from that judgment and sentence.

Appellant, with two codefendants, James T. Nakano and Vernon M. Otani, who pleaded guilty before trial, had gone to the Secoma Bowling Lanes which was then closed, during the early morning of April 17, 1967, with the admitted intention of burglarizing it. They had two walkie-talkies with them, but discovered that one of them was not functioning. The appellant asserted that he then stated his intention to withdraw from any further participation in the crime. Shortly thereafter, the other two men entered the building taking with them one of the walkie-talkies. The police then arrived and searched the area where they discovered the appellant and one of the codefendants attempting to hide from the officers. The appellant had deposited one of the walkie-talkies in a small ditch, but this was not discovered at the time of arrest.

Immediately following appellant's apprehension he was interviewed by Detective Leonard Randall who testified that he advised appellant orally of his constitutional rights before asking him any questions. The appellant disputes the officer's statement, but in any event, it is evident that only a general discussion followed in the lobby of the bowling alley. Appellant made no statement at that time which prejudiced him in any manner.

Later, on the same day, Detective Randall again talked with appellant in jail. At this meeting he again orally advised appellant of his constitutional rights and also handed to him a document with the same information thereon. The appellant declined to make any statement, stating that he wished to have an attorney. He was not questioned further after indicating to Detective Randall that he wished to exercise his constitutional rights.

---

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

On April 19, 1967, in response to a written request from appellant, the detective met with him. The warning of constitutional rights given in the officer's prior meetings with the appellant was not repeated at this meeting. The appellant then stated that, for a certain consideration, he would get the other two men to co-operate, and that he would do the same. Detective Randall told appellant that he was unable to make any deals and that he would have to talk to the prosecutor's office. The appellant then immediately revealed the location of the walkie-talkie which he had left near the scene of the burglary. This walkie-talkie was discovered and was admitted into evidence at the trial.

The appellant urges three assignments of error, the principal of which is that the trial court erred in admitting appellant's statements made while in custody, because, it is claimed, such statements were not voluntary; he had not knowingly waived his constitutional rights; had not been properly warned, and such admissions were elicited by the officer's promises and cajolery.

The appellant asserts that the law enforcement officer failed to warn him and obtain an intelligent and knowing waiver because a statement relative to his constitutional rights was not repeated immediately prior to his revealing the location of the walkie-talkie. In support of this position, appellant cites *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966), in which the United States Supreme Court emphasized the need of giving a warning to the accused of his constitutional rights at the time of interrogation. In that case the court said at 470:

> No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given.

█ It must be kept in mind that in the instant case appellant had been warned, both orally and in writing, 2 days before he made the statement with which we are concerned. There is further evidence that he had been warned prior to that time, immediately following the arrest. Detective Randall did not pursue any interrogation

after these warnings and the damaging statement was entirely voluntary and not the result of questioning by the law enforcement officer. The detective explicitly told appellant that he could make no deals, but that he would have to talk to the prosecutor's office. It is evident that the appellant made this statement freely and voluntarily, without any interrogation whatever, in the hope that it might gain him a parole revocation with which he was also confronted rather than further prosecution for the crime charged.

This case is readily distinguishable from *Miranda, supra,* because here there was no interrogation, appellant had been emphatically warned of his constitutional rights and he chose to waive those rights intelligently and knowingly.

The instant case is somewhat similar to *State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968), in which we held a voluntary statement admissible. This statement led to the discovery of the weapon used by the defendant in committing a murder and was made immediately after his arrest. The defendant had been given no warning of any kind. We held *Miranda, supra,* not applicable because the statement made was not responsive to a question and was made knowingly, intelligently, freely and voluntarily without any compelling influence.

We find nothing in the present case to support appellant's claim that the statement made by him resulted from the officer's promises and cajolery. Detective Randall, in answer to the appellant's offer to co-operate for a certain consideration, flatly refused to make any deal and only said he would talk to the prosecutor's office. This conversation was initiated by the appellant and the meeting was arranged only after the appellant had requested Detective Randall to contact him. No inducement was offered and no promises were made. In *State v. Davis,* 73 Wn.2d 271, 282, 438 P.2d 185 (1968), we said:

> "Cajolery" may be defined as a deliberate attempt at persuading or deceiving the accused, with false promises, inducements or information, into relinquishing his rights and responding to questions posed by law enforcement officers.

What occurred in the instant case falls far short of this definition and bears no resemblance to it.

A very recent case in which a defendant's statement was found to be voluntary is that of *State v. Collins, ante* p. 729, 446 P.2d 325 (1968), in which the facts are somewhat comparable to the instant case.

From what has been said above, it follows that the trial court did not err in admitting the evidence offered by the state.

We find no merit in appellant's further assignments of error based upon the trial court's denial of motions to dismiss because of insufficient evidence.

The judgment and sentence is affirmed.

FINLEY, C. J., HILL, HUNTER, and HAMILTON, JJ., concur.

February 19, 1969. Petition for rehearing denied.