[No. 111-40846-2.    Division Two.    May 6, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS DUANE JONES, *Appellant*.

*William C. Klein,* for appellant (appointed counsel for appeal).

*R. DeWitt Jones, Prosecuting Attorney,* and *Robert L. Harris, Deputy,* for respondent.

PEARSON, J.—Douglas Duane Jones appeals from a conviction and sentence for second-degree burglary.

The Brush Prairie Tavern in Clark County was burglarized early in the morning of October 20, 1967. Entrance was apparently gained by breaking a window in the ladies' restroom. Coin boxes of various tavern games were broken into and the coins removed. Money was also taken from a cigar box used for keeping change. Several cartons of cigarettes were also stolen.

On the night of October 21, 1967, the defendant, together with two other occupants of a station wagon, was arrested. A fourth occupant, the driver, fled the scene after the vehicle was stopped by a state patrol officer for speeding. He was never apprehended.

The arresting officer testified that after stopping the vehicle, the driver fled and the other passengers opened the doors and started to leave. This led him to believe that the Oregon-licensed vehicle was stolen.

The three passengers were searched and placed in the police car. An immediate search of the station wagon disclosed a loaded .22 caliber pistol, a cigar box later identified as one taken from the Brush Prairie Tavern, two walkie-talkies, two 12-inch screwdrivers, and a large and a small crowbar. The latter tools were new and had been sharpened on the ends. The pistol was removed from the station wagon at the scene. The other items remained in the vehicle until after it was towed to the sheriff's office.

After being jailed in the Clark County jail for 26 hours, the defendant, very early in the morning of October 23, signed a "confession," (exhibit 5), which admitted responsibility for the tavern burglary. The confession stated that the defendant entered the tavern while an accomplice (not one of his brothers) waited outside. It also described how the crime was executed.[1]

---

[1] "I, Douglas Duane Jones, am 21 years of age, resident of Clark County, make the following statement of my own free will and accord.

Before his trial on the burglary charges, defendant pleaded guilty in district justice court to possession of a concealed weapon and burglary tools.

There are two principal issues before us on the appeal. The first is whether the defendant knowingly, intelligently and voluntarily waived his privilege against self-incrimination and his right to counsel. The second is whether the cigar box admitted in evidence should have been excluded as the "forbidden fruit" of an allegedly illegal search and seizure.

The trial court, in accordance with Criminal Rule 101.20W, held a hearing before the defendant's confession was admitted into evidence. The defendant claimed that he was never informed of his right to remain silent, to have an attorney, and to make a telephone call. Moreover, he contends that he was deprived of his right to have an attorney present at the interrogation. He also claims that he was not of sound or sober mind when he signed the statements and that the statement he signed was the result of harassment and coercion. On all of these contentions the trial court

---

I acknowledge that I have been advised of my constitutional rights and make this statement freely and voluntarily. I understand that anything contained in the statement may be used against me in a Court of law.

"No threats, promises or offers of any kind have been made and I have not been subjected to any physical or mental persuasion in the giving of this statement. I know that I have the right to contact an attorney before making this statement and that under the law the Court would appoint an attorney for me at public expense if I am without funds to employ an attorney on my own behalf.

"Having read the typed portion above and having been advised of my rights and being sober and of sound mind, I make the following statement: [verbatim]

"I Douglas Jones and James Anderson went to Brush Prarie. Went into Building through a Back window, going into a Rest Room, then into the tavern, opened all machines except the Juke Box, also approxamately 15 cartoons of cigarettes, we got $120.00 in cash, James Anderson stayed outside of Building, I then went out the same way I came in, when I was stopped by the state Police, the gun that was removed from the car belongs to me Personally. The cigarettes I gave to my brother, who lived at the Hill top motel.

"I have read the above statement and it is true and correct to the best of my knowledge.

"SIGNED: *Douglas Duane Jones /s/*"

found against the defendant and admitted the written statement and police testimony concerning subsequent oral admissions into evidence.

The central question before us is whether the confession was voluntary, or the result of harassment and coercion. The court believed that the statement was voluntary and that defendant had waived his constitutional rights.

■ The state has a heavy burden of showing a valid waiver of the right to counsel and against self-incrimination. *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Adams*, 76 Wn.2d 650, 458 P.2d 558 (1969); *State v. Collins*, 74 Wn.2d 729, 446 P.2d 325 (1968).

With reference to defendant's claim that he was not advised of his constitutional rights, the court found that defendant was repeatedly advised by various law enforcement officers of his right to remain silent and to have an attorney appointed. There was substantial evidence to support this finding, since several police officers testified that they gave the defendant a Miranda warning at various critical times.

The trial court was likewise justified from the evidence in finding that defendant was not deprived of exercising his rights by refusal of the police to permit his use of the telephone. The several law enforcement personnel who came in contact with defendant subsequent to his arrest testified that he made no request for counsel nor to make a telephone call. In rejecting defendant's contrary testimony, the trial court was, in our opinion, justified in doubting his credibility. Defendant testified of his past extensive criminal activity, about burglaries he had committed in Idaho, and that he was an "escapee" from California. Even though not yet 21 years of age, defendant had extensive experience with law enforcement personnel.

■ The Washington rule is that a waiver of constitutional rights need not be express, but may be inferred. *State v. Blanchey*, 75 Wn.2d 926, 454 P.2d 841 (1969). The prior criminal record of a defendant may also be considered in determining whether or not the confession was voluntar-

ily made. *State v. Collins,* 74 Wn.2d 729, 446 P.2d 325 (1968).

The defendant's claim that he was harassed and coerced into signing the confession was also rejected by the trial court. His claim was that his interrogator took him from his cell several times, prevented him from sleeping, and threatened to "violate" his brother's parole in an effort to break him down. The state produced corroborated testimony that there had been no such coercion or harassment. The written jail log indicated that defendant was interrogated twice. The first was at 10:15 p.m. on October 22 and was concluded in 53 minutes. The second commenced at midnight and this conference, requested by the defendant, lasted 30 minutes. The officers taking part denied any coercion or threats and testified that the possible parole revocation was brought up by the defendant.

We are also impressed by the fact that defendant made oral statements on later days elaborating on his written confession and signed an authorization for the police to pick up stolen cigarettes from a motel occupied by his brother, Richard. It would seem inconsistent for defendant to be concerned about his brother's parole status and yet direct the police to the place where Richard Jones was living. Also, no challenge was made to the voluntariness of the oral statements made, creating a strong inference that the written confession was likewise voluntary.

Defendant claims that because of narcotics he was not of sound and sober mind when he made the confession. However, he did not testify that he was affected by narcotics or suffering from withdrawal symptoms at the time of the confession. There was testimony that he was "nervous" at that time. The arresting officer thought he was high from narcotics at the time of his arrest, but that was 26 hours before the time he made the confession.

In view of the absence of any direct testimony that Jones was not of sound or sober mind when he signed the confession, we think the trial court was justified in its finding in

this regard. *See State v. Cuzzetto*, 76 Wn.2d 378, 457 P.2d 204 (1969).

Viewing all the circumstances surrounding the confession, we conclude that the trial court was justified in finding a valid waiver and voluntary confession.

The next question is concerned with admissibility of the cigar box which had been taken by the police from the back part of the station wagon in which defendant was riding when arrested. It could be seen through the right side window. It was observed when the car was searched at the scene of arrest, but it was not removed until at least 3 hours after the arrest when the station wagon was at the police station.

The search and seizure was admittedly made without a warrant. The state claims that the seizure was valid, incident to a lawful arrest. The defendant asserts that the search and seizure were beyond the scope authorized incident to the arrest.

The most recent United States Supreme Court opinion on the scope of search incident to an arrest is *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). In that opinion, the United States Supreme Court held that a search incident to a valid arrest can only extend to the person of the defendant and the area within which he might obtain either a weapon or something which could be used as evidence against him. The court declared that incident to a lawful arrest, the police could not search without warrant the entire house in which the suspect resided. However, questions involving searches of automobiles are different from questions involving searches of fixed structures like houses. What may be an unreasonable search of a house may be a reasonable search of an automobile, because the latter can be easily moved. *Preston v. United States*, 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964).

The defendant has claimed that the initial arrest of defendant was illegal. We disagree. The car was stopped for a speeding violation. Because the driver fled and because the

three passengers appeared to be leaving the car, the patrolman had reasonable cause to believe that the vehicle could have been stolen or that some other crime aside from a traffic violation had occurred.

The arrest being lawful, was the search lawful? Under the *Chimel* decision, the United States Supreme Court rejected the constitutionality of allowing searches of areas "under the control" of the person arrested. *Chimel* limited searches to the area where a suspect might obtain weapons or obtain and destroy evidence of crimes. In this case, the suspects had been arrested, searched, and placed securely in a police car before the station wagon was searched. Clearly, the three suspects were not in a position to obtain evidence or weapons from the car in which they were riding. This is especially true in view of the fact that several police officers came to the scene of the arrest immediately upon the arrest of defendant. We do not think the search can be sustained as a valid search incident to an arrest.

■ We do, however, think the search was valid as an inventory search. *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968). Officer Mattern testified that he made a mental inventory of the contents of the vehicle, preparatory to the time the vehicle was towed in. The items were removed and marked when the car was at the sheriff's garage. Such inventories are made to protect both the owner of the car and the police from claims and loss of property. The fact that the driver of the car was at large was additional reason for making an inventory search, since the driver might return to the vehicle and attempt to remove it or its contents before it could be towed away. There was no one who could drive the vehicle, since the other occupants had all been arrested. Consequently, it was reasonable and proper to impound the car.

All searches must be reasonable under the circumstances of the case, and general exploratory searches without warrant are forbidden. *State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969). Under the circumstances of this case, we think

the impoundment search was reasonable. The trial court believed, and we believe, that the seizure of the items uncovered by the lawful impoundment search was proper and the cigar box was consequently admissible. *Abel v. United States*, 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960).

The defendant has made three assignments of error which we can treat summarily.

He assigns error to the giving of instruction No. 7[2] and the failure to give his proposed instructions No. 2 and No. 3. He claims that instruction No. 7 does not clearly set forth the heavy burden of proof upon the state to show a valid waiver and voluntary confession. We think instruction No. 7 was proper. It requires the jury to find beyond a reasonable doubt that there was a valid waiver and voluntary confession. This instruction certainly places a heavy burden upon the state to show a waiver of constitutional rights.

---

[2]"Confessions, if any, made by a defendant charged with a crime may be considered by you if you find from the evidence and beyond a reasonable doubt, (1) That such confession, if any, was made after the defendant was given warning and advice concerning his constitutional rights and that he understood the meaning of the warning and advice, and (2) That such confession, if any, was not caused by duress or fear produced by threats or induced by promises.

"A voluntary confession is to be considered by the jury in connection with all of the other evidence in the case in determining the guilt or innocence of the accused and its weight as evidence, like that of any other fact, is to be determined by you alone.

"If you find under the evidence and beyond a reasonable doubt that a voluntary confession has been made in this case, you should, in weighing it, consider all of the facts and circumstances connected therewith, together with the defendant's interest, if any, in the transaction and his knowledge of the circumstances surrounding the same. You should test the weight of a confession, if any, in the light of all of the circumstances which will aid you in weighing such evidence. and you may give such confession that weight and credibility in view of all surrounding circumstances which you, as the trier of the facts, may see fit. If you find from the evidence that a confession made by the defendant, if any, was involuntary or is not established to your satisfaction in the manner above set out, then the confession shall not be considered by you in arriving at your verdict."

■ The defendant objects to instruction No. 8[3] as unconstitutionally placing the burden of proof upon him to prove his alibi defense. In *State v. Pam*, 1 Wn. App. 723, 463 P.2d 200 (1969) the Court of Appeals upheld an instruction identical to the one given here under an identical challenge. The instruction given merely requires the defendant to come forward with evidence of the alibi itself and does not place the burden of persuasion upon the defendant as to the alibi defense.

■ Finally, the defendant has argued that the state is required to institute criminal proceedings by grand jury indictment, rather than by information. Our Supreme Court has recently held that a defendant may be charged by information and there is no contrary holding by the United States Supreme Court. *State v. Westphal*, 62 Wn.2d 301, 382 P.2d 269 (1963), *cert. denied*, 375 U.S. 947, 11 L. Ed. 2d 277, 84 S. Ct. 358 (1963).

Judgment and sentence are affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

---

[3]"A defense interposed by the defendant in this case is an alibi; that is, that the defendant was at another place at the identical time the crime was committed, if committed at all.

"When the State makes out such a case as would sustain a verdict of guilty and the defendant offers evidence, the burden is upon such defendant to make out his defense as to an alibi, but it is not incumbent upon him to prove an alibi beyond a reasonable doubt. When the proof is all in, both that given by the State and for the defendant, then the primary question is, the whole of the evidence being considered, whether such defendant is guilty beyond a reasonable doubt. The law is that if you have a reasonable doubt of the guilt of the accused, after having considered all the evidence, you should acquit; but if, after considering all the evidence, you do not have a reasonable doubt of the guilt of the accused, you should convict."