[No. 1701-1. Division One—Panel 2. October 24, 1972.]

THE STATE OF WASHINGTON, *Appellant*, v. KENNETH HAWKINS, *Respondent*.

*Christopher T. Bayley, Prosecuting Attorney,* and *Paul J. Bernstein, Deputy,* for appellant.

*Guterson & Rousso* and *Lewis Guterson,* for respondent.

SWANSON, J.—Defendant Hawkins' motion to suppress evidence was granted resulting in a dismissal of charges of credit card theft and forgery. The state appeals from the order of dismissal and assigns error to the order granting the motion to suppress.

The state contends that the evidence suppressed by the order, consisting of two wallets containing the allegedly stolen credit cards, was obtained in conjunction with a lawful inventory of defendant's personal property during the normal booking procedure following a lawful arrest.

Hawkins' argument in response is twofold. First, he asserts that the arrest was illegal which invalidated any subsequent search. Second, Hawkins contends he was the victim of an unlawful search because even if the arrest were lawful the search should not have gone beyond searching

for weapons or items connected with the crime for which he was arrested; consequently, even if a pat-down search for weapons produced a wallet, the officers had no right to go further and open it.

The trial court agreed with these contentions and said in ruling on the motion:

> Motion will be granted. The question I ask myself in all these cases is whether the actions of the police officers are reasonable and, I think, they are totally unreasonable.

In determining the correctness of the trial court's ruling, we have carefully reviewed the evidence presented below which consists only of testimony of the two arresting police officers. Officer Zarko testified:

> Q What did you observe concerning the defendant at that time? A I observed him getting out of the vehicle. Q Then what did he do? A Walked back to a vehicle directly behind him and removed what appeared to be a parking citation and walked back and placed it on the windshield of his vehicle. . . . Q After the defendant did what you indicated you had observed, what action did you take? A We went around to the vehicle, to the defendant's vehicle, and the vehicle directly behind him and my partner got out of my vehicle and removed the parking citation from the defendant's windshield, checked the license number on the citation, and my partner looked at the license plate on the defendant's vehicle and walked back to the vehicle directly behind him, and the vehicle license on the ticket matched the one on the one behind the defendant's vehicle.

The two police officers waited until the defendant returned, and Officer Zarko related what took place upon defendant's return by stating:

> Q When did you next see the defendant? A As he was approaching his vehicle approximately forty minutes later. Q As he approached his vehicle, did you recognize him? A Yes, sir. Q Did you feel that you could identify him as the person who had taken this parking ticket and put it on his own windshield? A Yes, sir. . . . Q Then what happened next? A My partner informed him that we had observed him taking a parking citation from

one vehicle and placing it on another, and he wanted to verify that vehicle belonged to the defendant. Q What did the defendant say? A He said, "I am not showing you any identification." . . . Q What happened next? A I got out of the vehicle and placed the defendant under arrest for violation of a parking citation.

This testimony corroborated by the other officer provides a reasonable basis for concluding that a misdemeanor had been committed in violation of Seattle Municipal Code 21.36.060 relative to parking upon a street adjacent to a parking meter. In addition, defendant's refusal to give any identification to the police officer in such circumstances is in itself a misdemeanor under the Seattle Municipal Code 21.26.280.

█ The only argument advanced by defendant Hawkins which questions the legality of the arrest is that the police officers waited an unreasonable length of time (40 minutes) after witnessing the alleged misdemeanor violation before actually arresting him. We are not persuaded by this argument. The 40-minute lapse of time from the point of initial observation and the actual arrest was due at least in part to the officers' investigation of the parking citation that they had observed the defendant remove from another vehicle. Also, the defendant had left the scene, so it was not unreasonable for the officers to wait for his return. The fact that 40 minutes elapsed before an arrest was actually effected does not make that which the officers' initially observed any less a misdemeanor committed in the officers' presence.

Hawkins' second argument is that, even if the arrest were lawful, the taking of the wallets and the search of their contents at the police station was unreasonable and not necessary for the safety and protection of the peace officers. This argument, too, must fail. In this connection, we note that although a pat-down search was conducted at the scene of the arrest, apparently nothing was obtained from the defendant at that time. Officer Zarko testified:

Q At that point, Officer Zarko, were you concerned about

any weapon on the defendant? A I made a pat-down search, yes, sir. . . . Q Did you remove anything from the defendant at that time? A No, sir.

Both police officers then testified that after the defendant was placed in the back seat of the police car, defendant Hawkins attempted to hand a wallet through the window of the car to a female companion. The officers prevented him from doing this, and when they arrived at the police station the officers took possession of the wallet. Officer Zarko testified:

Q What happened when you got to the station? A I got out of the police vehicle, which I was driving, went around to where the defendant was sitting next to the door, and I opened the door. And at that time, the defendant's hat, a large brown hat, was next to him and the door, and it started to fall out, and he grabbed it. And in the hat was a wallet, and he grabbed it and I took the hat and the wallet into the police station.

Additional testimony indicated that a second wallet was discovered in the back seat area of the patrol car.

Thereafter, defendant's counsel, when explaining the materiality of his line of questioning to the court, stated that he was trying to find out who opened the wallets and found the credit cards. At this point the court correctly observed:

THE COURT: Is it material who opened them? Either they had them legally or didn't have them legally.
MR. GUTERSON: I will withdraw the question, your Honor. No further questions.

■ The record indicates that defendant Hawkins was lawfully arrested for a misdemeanor committed in the presence of the two Seattle police officers, and the wallets in question were properly and reasonably removed from his possession at the police station as part of the normal booking procedure which includes an inventory of a defendant's personal property prior to being confined. *See State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Henneke,* 78 Wn.2d 147, 470 P.2d 176 (1970); *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970); *State v. Potts,* 1 Wn.

App. 614, 464 P.2d 742 (1969). The arrest being lawful and the search reasonable, the trial court erred in ordering the evidence suppressed.

The order of dismissal is reversed.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied December 5, 1972.