THE STATE OF WASHINGTON, *Respondent*, v. JOHN CAGLE, *Appellant*.

*Mark S. Clark* (of *Hillis, Schell, Phillips, Cairncross, Clark & Martin*) and *Barbara Durham* (of *Wacker & Durham*), for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Stewart P. Riley, Deputy*, for respondent.

PEARSON, J.—This is an appeal from a conviction and sentence for the crime of grand larceny. The facts are not in dispute. On June 2, 1970, at approximately 3:40 a.m., Officer J. H. Kelleher of the Tukwila Police Department stopped the defendant, John Cagle, within the city limits

for going in excess of 60 miles per hour in a 35 miles per hour zone, and for straddling the right lane line. Defendant had gotten out of his station wagon and had walked back to the patrol car when the odor of alcohol was noted on his breath. After defendant admitted he had been drinking, Kelleher asked him to undergo a physical test. Defendant satisfactorily performed all of the physical tests, but during the testing Kelleher noticed a large television set in the back of defendant's station wagon. This did not arouse the officer's suspicion until, in making a routine record check, Kelleher learned that defendant had a prior record for burglary. At this point, the officer decided to take a closer look at the television set. Upon looking into the car with his flashlight from outside the rear window, Kelleher saw that the television set was old and battered, but also observed a pile of men's suits, either new or in good condition, lying across the back seat, and a passenger who appeared to be asleep or passed out in the front seat. Officer Kelleher proceeded to the right front passenger door, opened it, and shook the passenger to wake him up. Because the passenger was unable to remove his identification from his back pocket while sitting down, Kelleher asked him to step out of the car. As the passenger did so, he kicked something with his foot that made a clanking noise. Looking down from his position outside the car, Kelleher saw the end of a crowbar protruding from beneath the seat. The officer reached down and pulled out the crowbar, and in doing so, hooked a keyhole saw, which came out as well. At this point, Kelleher climbed in, and, kneeling on the front seat, pulled out some of the suits. He then noticed a red bag and a suitcase on the floor of the back seat. The suitcase was not closed, and furs could be seen protruding from it. Officer Kelleher stepped from the station wagon and arrested defendant on suspicion of burglary.[1] It was later discovered that the suits and furs had been stolen.

---

[1]Officer Kelleher stated that no one was under arrest until the furs were discovered, and that at no time was he afraid either occupant possessed weapons or that defendant would be able to drive away.

■ The sole issue on appeal is: Was the trial judge's denial of a motion to suppress evidence, consisting of the suits, tools, and furs, proper? It has long been settled that objects falling in the "plain view" of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced in evidence. *State v. Woods*, 3 Wn. App. 420, 475 P.2d 573 (1970); *Harris v. United States*, 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968).

The rationale of the "plain view" doctrine is that where contraband is in view, the substantive crime of possession is committed in the presence of the officer, and in fact no search is being conducted within the meaning of the Fourth Amendment. *Marshall v. United States*, 442 F.2d 185 (5th Cir. 1970).

■ Clearly, under this doctrine the suits were in plain view. The officer saw them from his position outside the back rear window. The fact that Kelleher was aided by the use of a flashlight to see what would have been clearly visible in daylight does not transform his observation into a search. In response to the contention that when an officer must use a flashlight to see the interior of a vehicle at night, he is in fact making an unlawful search, we agree with and adopt the views expressed in *Marshall v. United States, supra* at 189:

> We do not hold, of course, that *every* use of a flashlight is not a search. A probing, exploratory quest for evidence of crime is a search governed by Fourth Amendment standards whether a flashlight is used or not. The mere use of a flashlight, however, does not magically transmute a non-accusatory visual encounter into a Fourth Amendment search. When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned, seeing through eyes that are neither accusatory nor criminally investigatory. The plain view rule does not go into hibernation at sunset.

The tools were also in "plain view" under the doctrine. Even though Kelleher stated that he was not concerned about weapons, given the circumstances[2] he was at least justified in opening the passenger door, waking the passenger, and requesting him to produce some identification. When the passenger got out of the automobile to produce his identification and kicked the crowbar, that crowbar came into the officer's plain view from his rightful position outside the automobile, as did the keyhole saw when the crowbar was removed.

■ ■ At this point, after finding tools commonly used in burglaries, it must be concluded that Kelleher had probable cause to search the rest of the station wagon and seize the suits and the furs. The facts in the present case are very similar to those in *State v. Regan,* 76 Wn.2d 331, 457 P.2d 1016 (1969).[3] The court said the officer in that case could validly take cognizance of what he had observed in plain view and that constituted probable cause for arrest. If probable cause existed there for arrest, we conclude probable cause existed in the present case to search the rest of the station wagon. Due to an automobile's mobility, what may be an unreasonable search of a house may be a reasonable search of an automobile. *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). If probable cause does exist, an automobile can be searched without a search warrant.

[2]The officer testified that he was suspicious of two men traveling together at 3:30 a.m., especially as defendant had a prior record. Also, the automobile had been traveling nearly 30 miles per hour over the posted limit, defendant admitted he had been drinking, and the passenger appeared to be asleep or passed out.

[3]In *State v. Regan, supra,* the officers observed an automobile which had a burned-out taillight and switched license plates. The driver could not produce the registration, bags of goods were visible in the back seat, and when the passenger was told to get out of the automobile, he kicked a ceremonial sword that dislodged a revolver from underneath his seat. The defendants were placed under arrest, and the rest of the automobile was searched, disclosing stolen furs and jewels.

When defendant was first stopped, Officer Kelleher was limited in his seizure to those contraband objects in plain view, and in his search and seizure to items related to the traffic violation and to the maintenance of his own safety. But when the burglary tools came into plain view of the officer, combined with the other factors present,[4] it must be concluded that there was probable cause to search the rest of the automobile. *See State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964). It follows, therefore, that the defendant's motion to suppress this evidence was properly denied by the trial court.

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied November 29, 1971.

Review denied by Supreme Court December 28, 1971.

[No. 259-41494-2.　Division Two.　October 28, 1971.]