[No. 51501-8.   En Banc.   June 12, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. BILLY STEVEN STROUD, ET AL, *Appellants*.

*Teri M. Dettmer* and *Olson, Althauser & Dettmer,* for appellants.

*James Miller, Prosecuting Attorney,* and *Nelson E. Hunt, Deputy,* for respondent.

GOODLOE, J.—Early in the morning of December 3, 1982, Deputies Withrow and Mauermann of the Lewis County Sheriff's office observed a parked vehicle next to a vending machine in a closed Chevron gas station. The headlights were on and the car's engine was running. One of the defendants, Billy Steven Stroud, was standing beside the vending machine, while the other defendant, Herbert Lee Caywood, stood in the swing of the open passenger door, a couple of feet away from Stroud.

At the time the deputies arrived, the door of the vending machine appeared to be open. When Stroud saw the deputies, he shut the door and grabbed a key which was in the vending machine door lock. One of the deputies asked Stroud for the key, and Stroud complied, handing over a homemade key apparently designed to open vending machine locks. The officers decided to frisk both defendants, and found a second homemade key on Stroud and found that Caywood's coat pocket contained several dollars worth of change. The officer arrested the defendants for theft, advised them of their rights, handcuffed them, and placed them in the back of the patrol car.

After the defendants were in the patrol car, Officer Mauermann looked into the back of the car and saw a revolver on the backseat. Officer Mauermann seized the weapon and decided to search the entire passenger compartment, including the glove compartment. Mauermann found an unzipped luggage bag which contained, among other things, a sawed–off shotgun, ammunition for the gun, and a plastic container containing white powdery substance. A search of the unlocked glove compartment revealed several spoons, syringes, and a container full of a clear liquid.

Officer Mauermann returned to the patrol car and was informed by Officer Withrow that the car belonged to a friend of Caywood, and she asked that the officers leave the car at the service station so that she could pick it up later. The officers, however, decided to impound the car and transported it to the Lewis County Evidence Garage where additional items were seized in an inventory search.

The residue in the spoons was identified as heroin and methamphetamine. The defendants moved for this evidence to be suppressed, as it was seized in a warrantless search of the automobile at a time when the officers were not in danger and there was no chance that the evidence in the car would be destroyed. The trial court refused to suppress the evidence, holding that although no exigent circumstances existed, the search was lawful pursuant to the automobile exception. The two defendants were subsequently convicted in a nonjury trial of possession of heroin, possession of methamphetamine, and being felons in possession of a firearm.

The defendants appealed their convictions on the grounds that the trial court should have suppressed the evidence seized in the warrantless search of the automobile. The Court of Appeals certified this case to us. We affirm the conviction and attempt to define more precisely the scope of the automobile exception to the warrant requirement implied in article 1, section 7 of the Washington Constitution.

## I

In recent cases, the United States Supreme Court has enlarged the narrow exceptions to the prohibition in the Fourth Amendment against warrantless searches. The effect has been to make lawful a warrantless search of a passenger compartment of a car, and all containers (luggage, paper bags, etc.) inside it, pursuant to a lawful custodial arrest. *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). The Supreme Court has also held that, if the officers have probable cause to believe that the trunk contains contraband, they may also search any containers inside the trunk for this contraband. *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982).

These exceptions to the Fourth Amendment were part of narrowly and jealously drawn exemptions to the warrant requirement. The rationale for these decisions was that the exigencies of the situation surrounding a car search pursuant to a custodial arrest outweighed whatever privacy interests the driver and passengers had in the articles and containers in the car. *Belton,* at 461. These exigencies included the danger that the suspect could destroy the evidence in the car, the car could be driven away, or the suspect could grab a weapon secreted somewhere in the passenger compartment. Federal courts have not distinguished between situations in which the suspect was already handcuffed in the patrol car, or was not actually in police custody at the exact moment of the search, *United States v. Mided,* 582 F. Supp. 1182, 1185 (N.D. Ill. 1984), because such a distinction would overly complicate exactly when a warrantless search would be permissible.

Another theme running through the recent Supreme Court pronouncements is that the privacy interests of an individual in his or her luggage are reduced when these articles are placed inside a car. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). "[T]he configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with

respect to differently situated property." (Citations omitted.) *Sanders,* at 761. Therefore, the Supreme Court has balanced the exigencies of the situation surrounding an arrest of a suspect in a car with the diminished privacy interests which the suspect could expect with goods placed in a car, and has held that a warrantless search of the passenger compartment of a car pursuant to a custodial arrest does not violate the Fourth Amendment.

█ If we were to decide this case merely by following United States Supreme Court precedent, the search of the car pursuant to this lawful arrest would clearly be valid. We decline to do so, however, based on our belief that our Washington State Constitution affords individuals greater protections against warrantless searches than does the Fourth Amendment. We believe this for a variety of reasons. First, when the framers of our state constitution adopted article 1, section 7, they specifically rejected a provision identical to the Fourth Amendment. *Journal of the Washington State Constitutional Convention, 1889,* at 497 (B. Rosenow ed. 1962). Instead, our forefathers decided on the following: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision, unlike any provision in the federal constitution, explicitly protects the privacy rights of Washington citizens, *State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982), and these privacy rights include the freedom from warrantless searches absent special circumstances.

Secondly, both the United States and the Washington State Supreme Courts have recognized that "state constitutional provisions [may be] more protective of individual rights than the parallel provisions of the United States Constitution." *State v. Simpson,* 95 Wn.2d 170, 177, 622 P.2d 1199 (1980). *See also Massachusetts v. Upton,* 466 U.S. 727, 80 L. Ed. 2d 721, 728–31, 104 S. Ct. 2085 (1984) (Stevens, J., concurring). Recent holdings of this court have indicated that we will protect Washington citizens' right to privacy in search and seizure cases more vigorously than they would be protected under the federal constitution.

*State v. Simpson, supra; State v. White, supra; State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983); *State v. Myrick,* 102 Wn.2d 506, 688 P.2d 151 (1984). During a period in which the federal interpretation more carefully limits an individual's federal privacy rights, we decline to follow the federal lead as our state constitution provides specific additional guaranties of a right to privacy.

In deciding this case, we are mindful of the recent United States Supreme Court decision in *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). In *Long,* the United States Supreme Court held that states, in deciding the bulk of criminal cases, created a considerable amount of federal law when applying federal constitutional standards. In many cases, jurisdictional confusion has arisen because the state court had not clearly indicated whether its holdings rested on federal grounds or on adequate, separate and independent state grounds, which would preclude Supreme Court review. In order to assure the unity of federal constitutional interpretation and to clarify this jurisdictional conflict, the Supreme Court has articulated the "plain statement" rule:

> [W]hen . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Long,* at 1040–41.

We wish to make clear that our subsequent determination in this case is not based on prior federal case law, and that we decide this case solely on independent state grounds. We believe that our state's constitution, and recent case law interpreting it, mandate the decision we arrive at today. Furthermore, the role we set regarding the automobile exception to the search warrant requirement is not based on federal precedent, as we have independently

weighed the privacy interests individuals have in items within their automobile and the dangers to the officers and law enforcement presented during an arrest of an individual inside an automobile. Our divergence from the decisions of federal courts is based on this heightened protection of privacy by our state constitution.

## II

Although we apply the more protective standards of article 1, section 7, we nevertheless hold the search of defendants' car lawful. In doing so, we find no alternative but to overrule a part of our decision 2 years ago in *State v. Ringer, supra.*

In *Ringer,* this court held that, absent actual exigent circumstances, a warrantless search of a suspect's vehicle was impermissible. The defendant in *Ringer* was lawfully parked in a rest area when two officers discovered that a felony arrest warrant existed justifying the defendant's arrest. The officers ordered the defendant out of his van, arrested him, handcuffed him, and placed him in the back of the patrol car. During this arrest process, the officers noticed a strong odor of marijuana emanating from defendant's van. The officers subsequently searched the van and discovered closed, unlocked suitcases which contained marijuana, cocaine, and other controlled substances.

This court held that the search violated article 1, section 7. The basis for this holding was that

[a] warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested.

(Citations omitted.) *Ringer,* at 699. This court then viewed the "totality of circumstances" surrounding the arrest, and decided that the burden was on the police officers to show that the exigencies of the particular situation required a warrantless search. *Ringer,* at 701, citing *State v. Bean,* 89 Wn.2d 467, 472, 572 P.2d 1102 (1978). This was clearly to

be done on a case–by–case basis. Because of the availability of a telephone search warrant, because of the lack of danger posed to the officers once the suspect was in the patrol car, and because the van was lawfully parked and immobile, the warrantless search was in this case disallowed.

We cannot agree with all of the reasoning used in *Ringer,* and agree that this part of the opinion must be overruled. The *Ringer* holding makes it virtually impossible for officers to decide whether or not a warrantless search would be permissible. Weighing the "totality of circumstances" is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection. As the United States Supreme Court stated in *New York v. Belton,* 453 U.S. 454, 458, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), quoting LaFave, *"Case–by–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup. Ct. Rev. 127, 142:

> A highly sophisticated set of rules . . . requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.'"

We agree with the Supreme Court's decision to draw a clearer line to aid police enforcement, although because of our state's additional protection of privacy rights we must draw the line differently than did the United States Supreme Court.

The Supreme Court, in *Belton,* held that the dangers to the officers and the possible destruction of evidence justified the search of all containers in the passenger compartment of a car pursuant to a lawful custodial arrest. Likewise, in *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), if the officers have probable cause to believe the trunk has contraband, they may search it also. We agree with the Court that these exigencies exist. However, because of our heightened privacy protection, we do not believe that these exigencies always allow a search.

Rather, these exigencies must be balanced against whatever privacy interests the individual has in the articles in the car.

In *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980), we recognized that a person in possession of a vehicle has a legitimate expectation of privacy under article 1, section 7 in the vehicle, including the vehicle identification number, assuming this serial number was not visible from the outside. This analysis also must be true of articles within the vehicle which also are not visible because, for example, they are in a suitcase or the glove compartment. Furthermore, this court also held in *Simpson* that the act of locking a car "manifests a subjective expectation of privacy which is objectively justifiable". *Simpson,* at 187. Thus additional privacy expectations must also result from locking articles within a container.

To weigh the actual exigent circumstances against the actual privacy interests on a case–by–case basis would create too difficult a rule to allow for both effective police enforcement and also protection of individual rights. However, a reasonable balance can be struck. During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant. The rationale for this is twofold. First, by locking the container, the individual has shown that he or she reasonably expects the contents to remain private. *State v. Simpson, supra.* Secondly, the danger that the individual either could destroy or hide evidence located within the container or grab a weapon is minimized. The individual would have to spend time unlocking the container, during which time the officers have an opportunity to prevent the individual's access to the contents of the container. This rule will more adequately address the needs of officers and privacy interests

of individuals than the rules set forth by either *Belton* or *Ringer*.

## III

When applying this rule to the facts of this case, the result is clear. Defendants Stroud and Caywood were lawfully arrested next to their car while the door was still open. The car's engine was running and a gun was located in plain view on the backseat. The officers would be entitled to enter the car without a warrant to retrieve the gun, both under the rule described above, as well as a "plain view" exception to the warrant requirement. *See State v. Myrick*, 102 Wn.2d 506, 514, 688 P.2d 151 (1984). Furthermore, the luggage inside the passenger compartment and the glove compartment were not locked, so a search of these containers would not violate the defendants' constitutional rights.

Accordingly, we uphold the convictions of the defendants on the basis of the evidence gathered in these searches, which did not violate the defendants' state or federal constitutional rights.

UTTER, BRACHTENBACH, and PEARSON, JJ., concur.
DOLLIVER, C.J., concurs in the result.

DURHAM, J. (concurring in the result)—I concur in the majority's affirmation of Stroud's and Caywood's convictions. The search which unearthed the evidence of the crimes for which they were convicted was within the permissible scope of an automobile search conducted incident to an arrest.

I disagree, however, with some of the majority's reasoning and, in particular, with its announcement of a new rule which distinguishes between locked and unlocked containers found in automobiles.

This court is faced with the task of defining the permissible scope of an automobile search incident to the arrest of its driver or passengers. To this end, we are required to interpret our state constitution's article 1, section 7 prohibition on invasion of private affairs without authority of

law.[1]

My analysis will demonstrate that a lawful arrest provides the "authority of law" required by our constitution to conduct an automobile search. The permissible scope of such a search is determined by the exigent circumstances which surround an automobile. This opinion will also consider the applicability of privacy expectations to an automobile search incident to arrest analysis.

We must conform to the requirements of the United States Constitution's Fourth Amendment prohibition against unreasonable searches and seizures,[2] applicable to the states through the United States Constitution's Fourteenth Amendment and enforced by the exclusionary rule, *Ker v. California,* 374 U.S. 23, 30–34, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *Mapp v. Ohio,* 367 U.S. 643, 654–55, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961), and as interpreted by the United States Supreme Court.

Our analysis should begin with the Washington Constitution because Const. art. 1, § 7 requires an analysis independent of the Fourth Amendment. *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984); *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1983); *see also State v. Coe,* 101 Wn.2d 364, 373–74, 679 P.2d 353 (1984) (interpreting Const. art. 1, § 5). *Ringer* examined some of the English common law underpinnings of the search incident to arrest doctrine just before Washington attained statehood in 1889. *Ringer,* at 690–93. *Ringer* noted that this court began by recognizing the doctrine, in dicta, to allow searches of an arrestee's person. *Ringer,* at 693 (citing *State ex rel. Murphy v. Brown,* 83 Wash. 100, 105–06, 145 P. 69 (1914)).

---

[1]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

[2]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. 4.

*Ringer* then states that in the succeeding decades until 1962, our decisions interpreting Const. art. 1, § 7 had expanded the scope of the search incident to arrest doctrine "to exceed by far any historical justification or precedent." *Ringer,* at 695. Early Washington automobile search cases are cited nearly exclusively for this proposition.[3] However, *Ringer* fails to include the fact that the intervening advent of the automobile is pivotal to Const. art. 1, § 7 jurisprudence.

The *Ringer* court cites *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962) for the proposition that, in 1962, "this court began to impose restrictions" on the search incident to arrest doctrine. *Ringer,* at 696. In fact, this court never did impose such restrictions. *Michaels* is not on point. The automobile search in *Michaels* was invalidated because it followed a pretext arrest. The defendant was arrested for failing to signal for a left turn by police officers who had been alerted to look for his automobile but did not have probable cause to search it. They searched the automobile and found suitcases in the trunk containing dice and other illegal gambling devices. The *Michaels* court held that, upon making an arrest, an officer "may search the person and his immediate environs . . . for items connected with the crime for which the person was arrested, or which might aid in his escape." *Michaels,* at 643. A later decision of this court prohibited custodial arrests for minor traffic violations, foreclosing the opportunity for automobile searches incident to such arrests. *State v. Hehman,* 90 Wn.2d 45, 47, 578 P.2d 527 (1978) (defective taillight and expired driver's license).

---

[3]*State v. Hughlett,* 124 Wash. 366, 214 P. 841 (1923) (allowing warrantless search of automobile and suitcase therein); *State v. Deitz,* 136 Wash. 228, 239 P. 386 (1925) (allowing search of trunk of arrestee's automobile); *State v. Miller,* 151 Wash. 114, 275 P. 75 (1929) (allowing search of automobile incident to arrest); *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952) (allowing search of arrestee's automobile incident to arrest, arrestee inside tavern at time of arrest); *State v. Jackovick,* 56 Wn.2d 915, 355 P.2d 976 (1960), *cert. denied,* 375 U.S. 854 (1963) (facts similar to *State v. Cyr, supra*).

In 1961, in *Mapp v. Ohio, supra,* the United States Supreme Court required states, for the first time, to conform their actions to its interpretations of the minimum protections offered by the fourth amendment to the United States Constitution or have the exclusionary rule imposed. Significantly, all of the cases *Ringer* claims disregarded our Const. art. 1, § 7 jurisprudence in favor of reliance on federal Fourth Amendment case law were post-*Mapp.*[4] When closely read, these cases do not at all represent departures from our prior interpretations of Const. art. 1, § 7.

In 1969, the United States Supreme Court decided that the permissible scope of a search incident to an arrest was limited by the Fourth Amendment to the area within the arrestee's immediate control, meaning places from which he might obtain a weapon or obtain and destroy incriminating evidence. *Chimel v. California,* 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). It was expected that *Chimel's* formulation would severely restrict the scope of automobile searches.[5] However, 12 years later, in *New York v. Belton,* 453 U.S. 454, 462, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the United States Supreme Court held that a search inci-

---

[4]*State v. Riggins,* 64 Wn.2d 881, 395 P.2d 85 (1964) (disallowing search of automobile day following arrest and impound because search not incident to arrest and arrest invalid); *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965) (allowing search of automobile incident to arrest, citing *State v. Jackovick, supra,* as well as federal case law); *State v. Johnson,* 71 Wn.2d 239, 427 P.2d 705 (1967) (disallowing automobile search for evidence of meter tampering following invalid pretext arrest for public drunkenness but allowing subsequent consent search, citing *Michaels* and *Riggins,* as well as federal cases); *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974) (allowing search of automobile incident to arrest, citing state and federal cases).

[5]In *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970), a search of the passenger compartment of an automobile incident to a valid arrest was not allowed. The *Jones* court based its holding on *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). *Jones,* at 632–33. It then upheld the search as an inventory search. As noted in the text, the narrow scope of an automobile search incident to arrest expected under *Chimel* was radically expanded by the United States Supreme Court in *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981) (allowing search of entire passenger compartment of automobile and any container therein).

dent to arrest of the entire passenger compartment of an automobile and any container therein could be harmonized with *Chimel.*

*Ringer* cites *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980) as this court's most recent expression of the search incident to arrest doctrine. *Ringer,* at 698. *Simpson* is not persuasive with regard to our Const. art. 1, § 7 analysis. First, the case merely applied *Chimel* without any state constitutional analysis of the search incident to arrest doctrine. Second, the brief discussion of the doctrine was only incidental to the court's primary holdings. The plurality opinion in *Simpson* was predominantly concerned with the continuing viability in Washington of the "automatic standing" rule whereby a criminal defendant charged with an offense that has possession of property as an element is allowed to contest a search or seizure of contraband or stolen goods without claiming possession of them, and thus invoking a privacy interest. The *Simpson* court concluded that the defendant had standing to contest the search.

*Simpson* rejected the State's contention that the search of the defendant's truck for its vehicle identification number was a permissible inventory search. The defendant had been arrested on a warrant for forgery and taken to jail. The subsequent impoundment of the defendant's truck from in front of his house was not lawful and the inventory search was held to be a mere pretext for an investigatory probe.

Although the State argued that it had conducted an inventory search, the *Simpson* court stated, as an afterthought, that the search was also not valid as incident to the arrest:

> [T]he [defendant] was not in the truck when arrested [he had just stepped out of it and locked it] and had already been removed from the area when the search of the truck took place. *See United States v. Day,* 455 F.2d 454 (3d Cir. 1972); 2 W. LaFave [*Search and Seizure*], at § 7.1.

*Simpson,* at 191. The federal case relied upon by the *Simpson* court held that *Chimel v. California, supra,* pro-

hibited a search of an automobile incident to arrest where the occupants were either in a patrol wagon or surrounded by police at the time of the search. *United States v. Day,* 455 F.2d 454, 456 (3d Cir. 1972). Also, the treatise section relied on by *Simpson* discussed *Chimel* at length. Thus, rather than following an independent analysis of Const. art. 1, § 7, the *Simpson* court merely applied *Chimel. State v. Ringer, supra,* was itself the first case to restrict, based on state constitutional grounds, the automobile search incident to arrest doctrine we had applied for nearly 60 years since *State v. Hughlett,* 124 Wash. 366, 214 P. 841 (1923).

We should adopt an independent analysis of Const. art. 1, § 7 on the basis of principles, not results. *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986); *see generally* Nock, *Seizing Opportunity, Searching for Theory: Article I, Section 7,* 8 U. Puget Sound L. Rev. 331 (1985); *cf. State v. Jackson,* 102 Wn.2d 432, 439, 688 P.2d 136 (1984) (difference in wording "mandates" more protection from searches and seizures under state constitution); *Simpson,* at 192 (Utter, J., concurring) (rely on state constitution only to provide more protection than federal constitution). Interpretations of Const. art. 1, § 7 may allow greater protection from searches and seizures than that accorded by United States Supreme Court interpretations of the Fourth Amendment, but nothing requires us, before undertaking the interpretation itself, to reach such a result. *State v. Chrisman,* 100 Wn.2d 814, 817–18, 676 P.2d 419 (1984). We may not, however, provide less protection than the minimum guaranties of the Fourth Amendment. *State v. Chrisman, supra.*

In a recent opinion, we set forth several "nonexclusive neutral criteria" for aid in state constitutional analysis. *State v. Gunwall, supra.* The *Gunwall* factors which are relevant in this case are as follows: first, the language of our state constitution itself and any differences between the state constitutional provision and its federal counterpart; second, prior interpretations of the state constitutional provision; third, any relevant United States Supreme Court

opinions. In our analysis, we may look to federal case law interpreting the federal constitution for guidance but must be mindful of the constraints imposed by *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983) (state court decisions resting primarily on or interwoven with federal law reviewable by United States Supreme Court where adequate and independent state grounds not clear from face of opinion).

## I

The meaning of the language of Const. art. 1, § 7 is not self-evident. It reads: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Unfortunately, no records were preserved of the debates in the constitutional convention of 1889. *Journal of the Washington State Constitutional Convention, 1889,* at vi–vii (B. Rosenow ed. 1962).[6]

The fourth amendment to the United States Constitution protects "persons, houses, papers, and effects" from "unreasonable searches and seizures" and specifies a probable cause requirement for warrants. Our state provision appears to place a greater emphasis than the Fourth Amendment on privacy interests. This mandates that our court analyze search and seizure issues in terms of a person's reasonable expectation of privacy. This is an objective "reasonable man" standard, not a test of a person's subjective expectation of privacy. *See State v. Myrick,* 102 Wn.2d 506, 513, 688 P.2d 151 (1984).

In contrast to the explicit warrant requirement of the Fourth Amendment, Const. art. 1, § 7 requires the authority of law for disturbing a person's reasonable expectation of privacy. Therefore, an analysis of search and seizure issues in those terms is also required.

---

[6]We know only that the language of Const. art. 1, § 7 as originally proposed to the convention was identical to that of the Fourth Amendment. The section in its present form was reported out of committee. *Journal of the Washington State Constitutional Convention, 1889,* at 51, 154, 497 (B. Rosenow ed. 1962).

## II
## WASHINGTON CASE LAW

In our first automobile search incident to arrest case, we stated:

> It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged. If a search may be made of the person or clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or suitcase which he may be carrying. From this it seems to us to follow logically that a similar search, under the same circumstances, may be made of the automobile of which he has possession and control at the time of his arrest. This is true because the person arrested has the immediate physical possession, not only of the grips or suit cases which he is carrying, but also of the automobile which he is driving and of which he has control.

*State v. Hughlett,* 124 Wash. 366, 370, 214 P. 841 (1923). In the *Hughlett* case, the defendants were arrested for bootlegging and put in jail. A search of their automobile then revealed a suitcase and sack filled with bottles of whiskey.

Later, in *State v. Deitz,* 136 Wash. 228, 239 P. 386 (1925), a search of an automobile trunk was allowed incident to an arrest. The defendant was arrested for improper lights and license plate (no longer permissible under *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978)); the search turned up 3 pints of moonshine whiskey. We quoted the above passage from *Hughlett* and said:

> The rule is that, where a man is legally arrested for an offense, whatever is found upon his person or in his control which is unlawful for him to have, and which may be used to establish the offense, may be seized and held as evidence in the prosecution.

*Deitz,* at 230.

The court in *State v. Miller,* 151 Wash. 114, 275 P. 75 (1929) allowed a search of two suitcases found in an arrestee's automobile at the police station after the arrest. Jugs of moonshine whiskey were found in the suitcases as evidence

of bootlegging, the crime for which the defendant was arrested. *Miller* simply held that whether that search was proper depended upon whether the arrest was proper. *Miller*, at 115.

In *State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952), the defendant was arrested while in a restaurant on a charge of burglary. A search of his car nearby revealed a half-filled jug of wine of the same brand as that taken in the burglary of which he was suspected. The *Cyr* court first ascertained that federal Fourth Amendment law was not applicable to the states and then discussed Const. art. 1, § 7 as follows:

> The constitutional requirement that searches and seizures be made only pursuant to "authority of law" is complied with where such search and seizure is made incident to a lawful arrest. Thus it is the general rule that, where a person is legally arrested, the arresting officer has a right to search such person and take from his possession money or goods which the officer reasonably believes to be connected with the supposed crime, and discoveries made in this lawful search may be shown in evidence at the trial.
>
> In the application of this rule, however, arresting officers are not confined to a search of the person. They may, for example, search his luggage or the automobile in which he is sitting. *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841 [(1923)].

(Citations omitted.) *Cyr*, at 843.[7]

In *State v. Olsen*, 43 Wn.2d 726, 263 P.2d 824 (1953), the court allowed a search of an automobile which unearthed an unlicensed pistol and burglary tools following the arrest

---

[7]The *Cyr* court then turned to the question of first impression in the case, "the right, incident to a lawful arrest, to search an automobile owned but not then occupied by the accused." *State v. Cyr*, 40 Wn.2d 840, 843, 246 P.2d 480 (1952). The court concluded that the search was permissible but in so doing blurred the issue by concluding that, following the arrest, probable cause to search was also present. It held that

> the automobile in question was in such reasonably close proximity to the place of arrest, and there existed such probable cause to believe that a search of the vehicle would reveal evidence pertinent to the charge, that such search and seizure was incident to the arrest and therefore authorized by law.

*Cyr*, at 844.

of its driver for traffic violations. The defendant was in jail at the time of the search. The court cited *Cyr, Deitz* and *Hughlett,* for the proposition that an automobile may be searched incident to an arrest. However, it apparently also found that the search was valid as an inventory search. *Olsen,* at 728.

When the issue of an automobile search following an arrest of a defendant found elsewhere was apparently presented again in *State v. Jackovick,* 56 Wn.2d 915, 355 P.2d 976 (1960), this court did not rely on *Cyr.* The *Jackovick* defendant was arrested at his sign shop for armed robbery and a subsequent search of the shop and his automobile parked in back turned up money and other evidence of the crime. It is not clear from the opinion if the incriminating evidence was found in the shop or in the automobile. It stated that the arresting officers believed, and had every reason to believe, that the defendant had fled the scene of the crime in the automobile parked behind the shop. The court merely stated, "It is well established that officers have a right, as incident to a lawful arrest, to search the person arrested and the area where the arrest is made." (Citations of search incident to arrest cases not involving automobile searches omitted.) *Jackovick,* at 916–17.

In the 1960's, this court followed *Jackovick* in *State v. Hoffman,* 64 Wn.2d 445, 449, 392 P.2d 237 (1964) and *State v. Darst,* 65 Wn.2d 808, 812, 399 P.2d 618 (1965). *Darst* held that "[i]f the arrest was lawful, *i.e.,* upon probable cause, then a search of the person, the immediate area and the nearby automobile became lawful." *Darst,* at 812. Our cases then followed and cited the *Darst* decision until *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) was decided by the United States Supreme Court. *State v. Poe,* 74 Wn.2d 425, 430, 445 P.2d 196 (1968) (search incident to arrest permissible to prevent destruction of evidence); *State v. Duckett,* 73 Wn.2d 692, 695, 440 P.2d 485 (1968); *State v. Kohler,* 70 Wn.2d 599, 604–05, 424 P.2d 656 (1967) (dicta), *cert. denied,* 389 U.S. 1038 (1968); *State v. Nolan,* 69 Wn.2d 961, 964, 421 P.2d 679 (1966);

*State v. McClung,* 66 Wn.2d 654, 659, 404 P.2d 460 (1965), *cert. denied,* 384 U.S. 1013 (1966).

Therefore, this court followed a broad search incident to arrest doctrine in which automobiles were at first included because arrestees had "possession and control" of them. *State v. Deitz, supra; State v. Hughlett, supra.* Then, in *Miller,* no reason at all was articulated for an automobile search, given an antecedent valid arrest. The *Cyr* court validated a search of an automobile in "reasonably close proximity to the place of arrest". Finally, in *Darst* and *Jackovick,* this court simply validated a search of an automobile located near the scene of an arrest by citing general search incident to arrest doctrine.

*Chimel* was decided by the United States Supreme Court in 1969, the year after *State v. Poe, supra.* As noted above, *Chimel* limited the scope of a search incident to arrest to the area from which the arrestee could obtain weapons or destructible evidence. Although the case concerned the search of an entire house incident to an arrest, *Chimel* can be read to require the courts of this state to restrict the scope of the automobile search incident to arrest traditionally allowed in Washington. *State v. Keyser,* 29 Wn. App. 120, 124, 627 P.2d 978 (1981) (decided before *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981) (allowing search incident to arrest of entire passenger compartment of automobile and any container therein as compatible with *Chimel* rule)); *State v. Palmer,* 5 Wn. App. 405, 408, 487 P.2d 627, *review denied,* 79 Wn.2d 1012 (1971); *State v. Jones,* 2 Wn. App. 627, 632–33, 472 P.2d 402 (1970).

However, in *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974), this court allowed the search of an automobile "contemporaneously" with an arrest. *Gluck,* at 428. The *Gluck* court did not even cite *Chimel* and, by implication, was disinclined to apply it to automobile searches. When *New York v. Belton, supra,* applied the *Chimel* rule in the automobile context and authorized a broad search of the passenger compartment incident to an arrest, this court was

free to return to its former analysis and case law interpreting Const. art. 1, § 7.

Article 1, section 7 prohibits, by its language, disturbance of one's private affairs or invasion of one's home without authority of law. Our prior case law allowing searches incident to arrest implicitly holds that, when an arrest is made, the arrest provides the required "authority of law". Thus, the fact of arrest itself makes a search permissible within the language of Const. art. 1, § 7.

### SCOPE OF SEARCH INCIDENT TO ARREST: EXIGENT CIRCUMSTANCES

The permissible scope of such a search is a different and more difficult question. Our early cases discuss searches for evidence of crime within the arrestee's "possession and control". *State v. Deitz, supra; State v. Hughlett, supra.* They hold that an automobile falls broadly within that criterion.

Two important exigent circumstances mandate allowing a search which encompasses the interior of an automobile following the arrest of a driver or passenger. The first is the fact of an automobile's mobility. "Due to an automobile's mobility, what may be an unreasonable search of a house may be a reasonable search of an automobile." *State v. Cagle,* 5 Wn. App. 644, 647, 490 P.2d 123, *review denied,* 80 Wn.2d 1003 (1971); *accord, State v. Jones,* 2 Wn. App. 627, 632, 472 P.2d 402 (1970). Discussing warrantless searches based upon probable cause, this court recently stated: "Because of the inherent mobility of a motor vehicle, it is impracticable in many situations to obtain a warrant prior to a vehicle search." *State v. Simpson,* 95 Wn.2d 170, 183, 622 P.2d 1199 (1980); *accord, State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). If the police are not allowed to search for evidence of crime at the time of an arrest, the automobile may be moved or incriminating evidence removed from it by accomplices of those arrested. *State v. Burgess,* 43 Wn. App. 253, 263–64, 716 P.2d 948 (1986); *State v. Pate,* 12 Wn. App. 237, 241–42, 529 P.2d 875

(1974), *review denied,* 85 Wn.2d 1005 (1975) (*Burgess* and *Pate* both upheld warrantless automobile searches based upon probable cause).

Second, public safety considerations require that the police be allowed to search for weapons and other contraband to make the automobile secure following an arrest.[8] Protection of the public from these dangers has been recognized by this court as a "valid and important" purpose in a discussion of inventory searches of automobiles. *See Houser,* at 154 n.2. In addition to protecting the public, the police must also be able to protect themselves against tort claims for failing to ensure that such hazards are removed from a vehicle left on the roadside.[9]

---

[8]The police, of course, have the authority to conduct warrantless searches for weapons to protect themselves. A search for weapons is permissible even absent an arrest if they have a reasonable suspicion that the suspect is dangerous and may gain access to a weapon in the automobile. *State v. Williams,* 102 Wn.2d 733, 738–39, 689 P.2d 1065 (1984) (discussing *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983)); *State v. McIntosh,* 42 Wn. App. 573, 578–79, 712 P.2d 319 (1986); *State v. Perez,* 41 Wn. App. 481, 485, 704 P.2d 625 (1985).

[9]Such claims might be brought by members of the public who fall victim to overlooked roadside guns or contraband found and used against them by others or even by themselves. An analogous claim was brought in *Bailey v. Forks,* 38 Wn. App. 656, 688 P.2d 526 (1984), *review granted,* 103 Wn.2d 1012 (1985), alleging that personal injuries suffered in a motorcycle collision with a truck were proximately caused by the failure of a police officer to prevent a man he knew to be heavily intoxicated from driving the truck.

The alternative of impounding the automobile following an arrest may, in effect, serve the same purposes of preserving evidence and protecting the public safety. However, the less intrusive alternative doesn't negate the justification for allowing searches incident to arrest because impoundment will not always be permissible. *State v. Williams,* 102 Wn.2d 733, 742–43, 689 P.2d 1065 (1984) (listing criteria for impoundment); 2 W. LaFave, *Search and Seizure* § 7.3(c) (1978) (impoundment for safekeeping may follow arrest "away from home"). Nor will it always be feasible.

*Williams'* requirement that the defendant, his spouse, or friends not be available to move the automobile is inapplicable in the context of a search incident to arrest in view of our primary concern for the preservation of evidence. *See State v. Bresolin,* 13 Wn. App. 386, 399–400, 534 P.2d 1394 (1975) (allowing impoundment where two suspects arrested and third suspect still at large), *review denied,* 86 Wn.2d 1011 (1976). In this case, Stroud and Caywood's automobile could have been impounded for safekeeping following their arrests. *State v. Patterson,* 8 Wn. App. 177, 504 P.2d 1197, *review denied,* 82 Wn.2d 1002 (1973); W. LaFave, *supra.*

There are conceptual difficulties for courts, as well as practical difficulties for the police, in applying *Ringer's* case–by–case analysis of the permissible scope of an automobile search incident to arrest. The *Ringer* test allowed a search post facto only to remove weapons which might have been used by the arrestee to resist arrest or escape and to avoid the destruction of evidence of the crime for which the person was arrested. *State v. Ringer,* 100 Wn.2d 686, 699, 674 P.2d 1240 (1983). If searches are allowed only when such actions are possible, then obviously police could search an automobile only when the arrestee is still inside or is standing near an open door. The police should not be required to place themselves in danger in order to conduct a search. And the exigencies mentioned above mandate that some type of search be allowed upon an arrest.

The *Ringer* opinion relied heavily on the availability of telephonic warrants and held that they must be considered in determining the existence of exigent circumstances. However, considerations about the ease of obtaining a warrant are irrelevant in the context of a search incident to an arrest. *Ringer* first decided that neither of the two searches in that case were justified as incident to an arrest. It then discussed whether the "exigent circumstances" exception applied to the search of Ringer's van, for which there was probable cause, and dealt with the availability of telephonic warrants at length. *Ringer,* at 699–703.

Also, *Ringer* appears to have overlooked the fact that telephonic warrants may be truly easy to obtain only during normal working hours in or near urban areas. The encounter with Stroud and Caywood, however, occurred at approximately 5 a.m., several miles south of Chehalis.

Finally, *Ringer's* purpose of invoking the protection of the warrant procedure would not be well served by requir-

---

A permissible inventory search would then have undoubtedly revealed the same incriminating evidence. *State v. Houser,* 95 Wn.2d 143, 154, 622 P.2d 1218 (1980). The record in this case does not show if the automobile could have been impounded under any of the other *Williams* criteria.

ing telephonic warrants anyway. Such warrants, without the involvement of prosecutors or legal advisors in the application process, are "substantially less likely either to meet constitutional standards or to provide meaningful protection." Nock, *Seizing Opportunity, Searching for Theory: Article I, Section 7,* 8 U. Puget Sound L. Rev. 331, 356 (1985).

At any rate, *Ringer*'s case–by–case approach to search and seizure questions appears, upon reflection, to be theoretically unsound. I agree with the majority that a clearer set of rules is needed to aid the police. Majority opinion, at 150–51. The privacy interests protected by Const. art. 1, § 7 can only be realized if the police are able to make a correct determination beforehand as to the justification for a search. *See* LaFave, *"Case–by–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup. Ct. Rev. 127, 142 (discussing U.S. Const. amends. 4, 14). In brief, adopting a case–by–case approach instead of a set of rules to guide police conduct accords too much discretion to the police. Nock, 8 U. Puget Sound L. Rev. at 339. Washington's traditional "per se" rule allows the police to search the passenger compartment of an automobile upon the arrest of a driver or passenger. The propriety of the search depends upon the legality of the arrest. *See State v. Miller,* 151 Wash. 114, 115, 275 P. 75 (1929).

### Diminished Expectation of Privacy

Because of the language of our constitution, we must also consider the applicability of a privacy analysis to search incident to arrest questions. Article 1, section 7 protects against unreasonable invasions of private affairs. *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Thus, a person enjoys Const. art. 1, § 7 protection to the extent that he has a reasonable expectation of privacy in a place or an object.

One does not expect the same degree of privacy in an automobile as in one's home. *State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (discussing warrantless

168

automobile searches based upon probable cause). Automobiles are licensed, heavily regulated, and subject to safety and pollution control inspections. Automobile travel has aspects of being both public and private. A diminished expectation of privacy in an automobile follows from these factors.

It is not, however, necessary to find a diminished expectation of privacy in an automobile in order to validate automobile searches incident to arrest. As already discussed, the fact of a lawful arrest and the exigencies which surround automobiles authorize a search of a passenger compartment. Application of a privacy analysis to automobiles is appropriate in other contexts.[10] *See State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980) (analyzing privacy interest in vehicle identification number); *Houser,* at 156 (inventory search).

A misapplication of privacy analysis to search incident to arrest questions is vividly illustrated by the majority's arbitrary distinction between locked and unlocked containers. The majority's implication that a person's reasonable expectation of privacy in a locked container exempts the container from an automobile search is unsupportable. It suggests a subjective test of a person's privacy expectations as support for drawing the line between locked and unlocked containers. Majority opinion, at 152. A subjective expectation of privacy may legitimately be held in any container, locked or unlocked, which a person takes with him

---

[10]Privacy analysis has not been applied to warrantless automobile searches based upon probable cause by this court, although such searches have been allowed. *State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964). The United States Supreme Court, however, has reasoned that the diminished expectation of privacy in an automobile, combined with the exigent circumstance of its mobility, underlies the less rigorous warrant requirements that it applies to automobile searches. *South Dakota v. Opperman,* 428 U.S. 364, 367–68, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Also in Fourth Amendment analysis, an individual's expectation of privacy in containers within the automobile is defeated when a warrantless search based upon probable cause is conducted. *United States v. Ross,* 456 U.S. 798, 823, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982).

into an automobile.[11] Is a rich criminal's expectation of privacy in a locked briefcase loaded with cash to be accorded greater deference than a poor criminal's expectation of privacy in tightly tied bank bags stuffed under the seat merely because of the type of container?[12] Such an approach could lead courts back to *Ringer's* case–by–case adjudication of search and seizure questions.

The exigent circumstances which surround an automobile search and militate against exempting containers from the search also refute the majority's argument that the exigencies do not require searching locked containers. Contrary to its assertion, the danger is not simply that the person arrested will destroy evidence or obtain a weapon. Majority opinion, at 152. Rather, what a search aims to prevent is the destruction of evidence by any person and threats to the public safety. The nature of these exigencies mandates

---

[11]In some cases, courts have not allowed warrantless searches of luggage taken from automobiles where probable cause to search the luggage existed prior to the defendant placing it in his automobile. *State v. Grinier,* 34 Wn. App. 164, 659 P.2d 550 (1983) (locked suitcase). In *Grinier,* a dissent argued that the fact that the defendant was arrested after the search should not prevent the search from being deemed incident to an arrest because independent grounds to arrest existed. *Grinier,* at 171 (Reed, J., dissenting). *See also Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). These cases have been characterized as "nonautomobile cases". *Grinier,* at 169–70.

[12]Although the majority's rule is based on independent state grounds, the United States Supreme Court has indicated that a somewhat similar rule basing the distinction on the nature of the container would run afoul of the Fourth Amendment:

> One point on which the Court was in virtually unanimous agreement in [*People v.*] *Robbins* [103 Cal. App. 3d 34, 162 Cal. Rptr. 780 (1980)] was that a constitutional distinction between "worthy" and "unworthy" containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction . . . a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf [may] claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case.

(Footnotes omitted.) *United States v. Ross,* 456 U.S. 798, 822, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) (warrantless automobile search based upon probable cause).

such a search. The fact that a container is locked does not make it invulnerable to others, nor immovable.

Thus, the majority's line–drawing exercise is contradicted by the very reasons for allowing searches of automobile passenger compartments incident to an arrest. Any distinction in this situation between locked and unlocked containers is logically inconsistent.

## III

The final step we must take in interpreting Const. art. 1, § 7 is to ensure that our result conforms to the minimum guaranties of the Fourth Amendment. Accordingly, it is necessary to review relevant decisions of the United States Supreme Court.

*Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) defined the scope of a search incident to an arrest allowed by the Fourth Amendment. *Chimel*, which considered a search of an entire house, held that a search incident to arrest must be confined to "the area 'within [the arrestee's] immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel,* at 763.

In *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the United States Supreme Court allowed the warrantless search of a zippered pocket of a jacket found in an automobile's passenger compartment following an arrest. It held that the passenger compartment, and articles within it, were "'within the arrestee's immediate control' within the meaning of the *Chimel* case." *Belton,* at 462. The *Belton* Court rejected case–by–case adjudication in favor of a "'single familiar standard'" to guide police officers. *Belton,* at 458 (quoting *Dunaway v. New York,* 442 U.S. 200, 213–14, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979)). It also said:

> "Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day–to–day activities . . . A

highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.'"

*Belton,* at 458 (quoting LaFave, *"Case–by–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup. Ct. Rev. 127, 141).

The scope of an automobile search incident to arrest permitted by the federal courts, then, is the same as the correct rule under Const. art. 1, § 7. We reach a comparable result through different reasoning. The reasoning I have used more logically reflects the actual exigencies present in situations where an arrestee is no longer able to gain access to the passenger compartment.

No distinction is made in *Belton* between locked and unlocked containers found in an automobile. The *Belton* Court stated that the police

> may also examine the contents of *any containers* found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.

(Italics mine.) *Belton,* at 460. In a footnote, the Court defined "container":

> "Container" here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like.

*Belton,* at 460 n.4. Even if a container is locked, it is still certainly an "object capable of holding another object". The *Belton* Court also, in the footnote, specifically noted that closed containers may be searched. Thus, the United States Supreme Court has not held that the Fourth Amendment prohibits a search of locked containers found in an automobile following an arrest. Instead, the language of *Belton* arguably permits it as part of a search of "any containers found within the passenger compartment". *Belton,* at 460.

In a different context than search incident to arrest, the United States Supreme Court discussed the concept that an individual's reasonable expectation of privacy may vary with the type of container. *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). In *Ross,* a warrantless search of a closed paper bag and a zippered leather pouch found in an automobile's trunk was upheld based upon probable cause. The Court stated:

> If [a] distinction is based on the proposition that the Fourth Amendment protects only those containers that objectively manifest an individual's reasonable expectation of privacy, however, the propriety of a warrantless search necessarily would turn on much more than the fabric of the container. A paper bag stapled shut and marked "private" might be found to manifest a reasonable expectation of privacy, as could a cardboard box stacked on top of two pieces of heavy luggage. The propriety of the warrantless search seemingly would turn on an objective appraisal of all the surrounding circumstances.

*Ross,* at 822 n.30.

Therefore, the United States Supreme Court has recognized that the distinction drawn between types of containers by the majority is untenable. In the context of an automobile search, analyzing a person's subjective expectation of privacy in containers leads us back inevitably to *Ringer*'s case–by–case approach.

The United States Supreme Court has also recognized the presence of other exigent circumstances—mobility and the potential for theft—in addition to *Chimel's* concern with the dangers posed to the police and the destruction of evidence in an arrest situation. These other exigencies have not been relied on to uphold a search of an automobile incident to an arrest but have provided reasons for allowing warrantless searches where probable cause sufficient to support the issuance of a warrant is nevertheless present. *See Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). *Carroll* recognized that

an automobile's mobility creates an exigent circumstance.[13]

Potential theft of an automobile or its contents was acknowledged as an exigent circumstance by the United States Supreme Court more recently. *Arkansas v. Sanders,* 442 U.S. 753, 765 n.14, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *United States v. Chadwick,* 433 U.S. 1, 13 n.7, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). The potential for theft of weapons or contraband forms the basis for my concern for public safety, discussed above.

Finally, I note that the United States Supreme Court has employed a "reasonable expectation of privacy" test in determining if searches of automobiles are unconstitutional.[14] *E.g., New York v. Class,* ___ U.S. ___, 89 L. Ed. 2d 81, 106 S.

---

[13]The *Carroll* Court upheld a search behind the upholstery of the seats, which turned up bottles of bootleg whiskey, without a warrant and based upon probable cause. *Carroll* characterized the search as involving "contraband goods in the course of transportation and subject to forfeiture or destruction." *Carroll,* at 149. The Court distinguished between a search of a house or fixed structure and a search of an automobile or other vehicle. It recognized that it may not be practicable to obtain a warrant in the case of the latter because "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll,* at 153; *see also Chambers v. Maroney,* 399 U.S. 42, 51, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970) ("the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained"). The "*Carroll* doctrine" or "automobile exception" to the warrant requirement has since been applied to the present day. *E.g., United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). The case before this court is not, of course, a *Carroll* doctrine case since the trial court found that probable cause was not present to search Stroud and Caywood's automobile.

[14]The "reasonable expectation of privacy" test had its origins in a wiretap case, *Katz v. United States,* 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring), in the following language: "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" The test was elaborated upon and renamed a "legitimate expectation of privacy" test in *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978):

> A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." . . . Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

Ct. 960, 965 (1986) (allowing minimally intrusive search for vehicle identification number); *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976) (allowing inventory search following impound); *Cardwell v. Lewis,* 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974) (plurality opinion) (allowing search of exterior upon probable cause). These cases did not involve searches incident to arrest and the United States Supreme Court has not used the privacy analysis in that context.

In analyzing the Fourth Amendment, the United States Supreme Court has found that one has a "lessened expectation of privacy" in an automobile resulting from its physical characteristics and use. *Class,* 106 S. Ct. at 965. *Cardwell v. Lewis, supra,* cited the transportation function of the automobile and the exposure of its occupants and contents to public view. *Cardwell,* at 590–91. *South Dakota v. Opperman, supra,* noted the pervasive governmental regulation of automobiles, including periodic inspections and stops for licensing and safety violations. *Opperman,* at 367–68. All of these factors "diminish the reasonable expectation of privacy in automobiles". *Class,* 106 S. Ct. at 966.

The above review demonstrates that the result of my Const. art. 1, § 7 interpretation conforms to the minimum guaranties of the Fourth Amendment as interpreted by the United States Supreme Court. This result is, however, based on "bona fide separate, adequate, and independent [state constitutional] grounds". *See Michigan v. Long,* 463 U.S. 1032, 1041, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983).

CONCLUSION

A lawful arrest provides Const. art. 1, § 7's required authority of law for a search of an automobile. The scope of the search is determined by the exigent circumstances outlined above. While a person does have a diminished expectation of privacy in an automobile, privacy expectations are

(Citations omitted.) *Rakas,* at 143 n.12. *Cf. State v. Myrick,* 102 Wn.2d 506, 513, 688 P.2d 151 (1984) (apparently rejecting *Rakas* test).

not properly considered in automobile search incident to arrest analysis.

In summary, I propose the following rule: Given a lawful arrest of the driver or a passenger of an automobile, police officers may contemporaneously search the passenger compartment and all of the containers, locked and unlocked, which they find therein. It is clear that under this rule the search which led to the convictions of Stroud and Caywood was permissible. The two defendants were lawfully arrested standing next to their automobile. A police officer shined a flashlight into the automobile and saw an apparently loaded gun on the backseat. This was not a search at all but a visual observation from a nonintrusive vantage point and is a textbook example of the open view doctrine. *State v. Campbell,* 103 Wn.2d 1, 23, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985). The use of a flashlight did not make it a search. *State v. Cagle,* 5 Wn. App. 644, 490 P.2d 123, *review denied,* 80 Wn.2d 1003 (1971).

The subsequent search of the automobile did not, though, depend for its validity on the sighting of the gun.[15] It was permissible due to the lawful arrests of the occupants. The fact that the defendants were in custody in the patrol car during the search is immaterial. *State v. Wilson,* 70 Wn.2d 638, 642, 424 P.2d 650 (1967); *State v. Schwartzenberger,* 70 Wn.2d 103, 104–07, 422 P.2d 323 (1966); *see also State v. Olsen,* 43 Wn.2d 726, 727–28, 263 P.2d 824 (1953).

The scope of the search was also proper. It extended in this case to the contents of two unzipped luggage bags and the unlocked glove compartment. Evidence of the crime for which the defendants were arrested (theft) was found: vending machine locks, homemade keys, and the tools apparently used to construct the keys. Illegal drugs and weapons were also found during the search and the defendants were each convicted of several counts of possession of

---

[15]The officer would have been permitted to enter the automobile to seize the loaded gun even absent an arrest.

controlled substances and of being felons in possession of firearms. It is immaterial that the defendants were convicted of crimes other than the one for which they were arrested. *State v. Olsen, supra* at 728; *State ex rel. Fong v. Superior Court,* 29 Wn.2d 601, 609, 188 P.2d 125 (1948), *cert. denied,* 337 U.S. 956 (1949).

DORE, ANDERSEN, and CALLOW, JJ., concur with DURHAM, J.

